UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

TD BANK, N.A.,

Plaintiff,

-against-

RAIZY'S WIG SALON, INC. and RAIZEL GROSS a/k/a RAIZY KLEIN,

Defendants.

---

REPORT AND RECOMMENDATION

No. 23-CV-6272 (DG) (JRC)

JAMES R. CHO, United States Magistrate Judge:

Plaintiff TD Bank, N.A. ("plaintiff") brings this diversity action for, *inter alia*, breach of contract against defendants Raizy's Wig Salon, Inc. ("Raizy's Wig Salon") and Raizel Gross a/k/a Raizy Klein ("Gross" and collectively, "defendants"), for failing to make payments due and owing under a commercial line of credit. *See* Compl., Dkt. 1. Currently before this Court, on referral from the Honorable Diane Gujarati, is plaintiff's motion for default judgment against defendants. *See* Mot. for Default J., Dkt. 37. For the reasons set forth below, this Court respectfully recommends granting plaintiff's motion.

**Factual Background**

The following facts are drawn from the allegations contained in the Complaint and the exhibits submitted in support of the instant motion.

Plaintiff is a national banking association with its main offices located in Delaware. *See* Compl. ¶ 2. Defendant Raizy's Wig Salon is a domestic business corporation located at 5616 18th Avenue, Brooklyn, New York 11204. *See id.* ¶ 3. Defendant Gross is domiciled in New York. *Id.* ¶ 4.

On February 22, 2019, plaintiff entered into a Promissory Note (the "Note") and Business

Loan Agreement (the "Loan Agreement") with Raizy's Wig Salon, in connection with a $100,000 Small Business Administration loan. *Id.* ¶¶ 7-9; *see also* Dkt. 37-3. The Note and Loan Agreement set forth Raizy's Wig Salon's obligation to pay "the principal amount of One Hundred Thousand & 00/100 Dollars ($100,000.00) or so much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance." Note at 1, Dkt. 37-2. Raizy's Wig Salon agreed to make monthly interest-only payments beginning March 22, 2019 through February 22, 2024, followed by monthly principal and interest payments beginning March 22, 2024 through February 22, 2029, when all remaining amounts under the Note became due. *See* Compl. ¶ 13; Note at 1, Dkt. 37-2. The interest rate on the Note "is subject to change from time to time based on changes in an independent index which is the Wall Street Journal Prime (the 'Index') . . . [which] will be calculated . . . using a rate of 3.490 percentage points over the Index, resulting in an initial rate of 8.990% per annum based on a year of 360 days." *See* Note at 1, Dkt. 37-2.[1] To secure the loan, Raizy's Wig Salon also executed a Commercial Security Agreement (the "Security Agreement"), which granted plaintiff a security interest in "all inventory, equipment, accounts (including but not limited to all health-care-insurance receivables) . . . and all products and proceeds (including but not limited to all insurance payments) of or relating to the foregoing property" (hereafter referred to as "Collateral"). *See* Sec. Agreement at 1, Dkt. 37-5; Compl. ¶ 48.

On March 1, 2019, plaintiff perfected the Security Agreement by filing a UCC-1 financing statement with the New York Secretary of State, followed by a UCC-3 financing statement on October 4, 2023. *See* UCC Financing Statements, Dkt. 37-6; Compl. ¶ 49.

The parties agreed that an event of default under the Note and Loan Agreement would

[1] The Complaint incorrectly states that the initial rate was 6.99 percent. *See* Compl. ¶ 12.

occur if "payment in full is not made immediately when due." *See* Loan Agreement at 4, Dkt. 37-3; Compl. ¶ 15. Upon the occurrence of an event of default, "at [plaintiff's] option, all Indebtedness immediately will become due and payable, all without notice of any kind to Borrower . . . [and] such acceleration shall be automatic and not optional." *See* Loan Agreement at 4, Dkt. 37-3. The Note further provided that, "if a payment is 15 days or more late," Raizy's Wig Salon would be "charged 5.000% of the unpaid portion of the regularly scheduled payment." *See* Compl. ¶ 18; Note at 1, Dkt. 37-2. Raizy's Wig Salon additionally agreed that it would "pay upon demand all of [plaintiff's] costs and expenses, including [plaintiff's] reasonable attorneys' fees and [plaintiff's] legal expenses, incurred in connection with the enforcement of this Agreement." *See* Loan Agreement at 4, Dkt. 37-3.

On February 22, 2019, defendant Gross executed an individual guaranty of the Note, Loan and Security Agreements, in which she "absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness . . . and the performance and discharge of all Borrower's obligations under the Note and the Related Documents." *See* Commercial Guaranty ("Guaranty") at 1, Dkt. 37-4.[2] Gross further agreed that she would "pay upon demand all of [plaintiff's] costs and expenses, including [plaintiff's] reasonable attorneys' fees and [plaintiff's] legal expenses, incurred in connection with the enforcement of this Guaranty." *Id.* at 3.

Plaintiff alleges that on or about May 4, 2021, plaintiff sent correspondence to defendants

[2] In the Guaranty, "Indebtedness" is defined as "all of the principal amount outstanding from time to time and at any one or more times, accrued unpaid interest thereon and all collection costs and legal expenses related thereto permitted by law, reasonable attorneys' fees, arising from any and all debts, liabilities and obligations of every nature or form, now existing or hereafter arising or acquired, that Borrower individually or collectively or interchangeably with others, owes or will owe [plaintiff]." Guaranty at 1 ("Indebtedness"), Dkt. 37-4.

declaring a default and demanding payment of all amounts due. *See* Compl. ¶ 21; Demand, Dkt. 37-7; Decl. of Glenn Anderson ("Anderson Decl.") ¶ 31, Dkt. 37-1. However, Raizy's Wig Salon failed to make these payments upon demand. *See* Compl. ¶ 22; Anderson Decl. ¶ 32. On or about February 8, 2022, plaintiff sent defendants correspondence reiterating its prior declaration and demanding payment. *See* Compl. ¶ 23; Anderson Decl. ¶ 33. Plaintiff further demanded that, if defendants were unable to make the required payments, they make available the property constituting collateral under the Security Agreement. *See* Demand, Dkt. 37-8. Defendants again failed to make payment after the additional demand. *See* Compl. ¶ 24; Anderson Decl. ¶ 33.

On April 8, 2022, plaintiff entered into a Forbearance Agreement with the defendants. *See* Compl. ¶ 25; Forbearance Agreement, Dkt. 37-9. Under the Forbearance Agreement, plaintiff and defendants agreed that the total amount due and owing under the loan documents as of March 31, 2022 was $94,489.09, including principal, interest, inspection/appraisal fees and legal fees and expenses. *See* Compl. ¶ 25; Forbearance Agreement ¶ 2, Dkt. 37-9. In addition, defendants agreed to make monthly payments of principal and interest in the amount of $5,000.00, commencing April 8, 2022 until October 8, 2023, when all remaining amounts were due. *See* Compl. ¶ 26; Forbearance Agreement ¶ 4.1. In exchange, plaintiff agreed to forbear from proceeding "with its remedies under the [Note, Loan and Security Agreements] until October 8, 2023, at which time, if there is no default by [defendants] under this Agreement and the [Note, Loan and Security Agreements] are paid in full, [plaintiff] shall mark the [Note, Loan and Security Agreements] satisfied." *See* Compl. ¶ 27; Forbearance Agreement ¶ 5.

The parties agreed that default under the Forbearance Agreement would occur if there were a "breach of any payment or other term, covenant, or condition contained in this

Agreement; or any default . . . under the [Note and Loan and Security Agreements]." *See* Forbearance Agreement ¶¶ 8.1, 8.2. In the event of default, plaintiff "may proceed with its full legal rights, including, without limitation, filing an action for collection of the outstanding amounts due under the [Note, Loan and Security Agreements] and [Forbearance Agreement] and enforcing any remedies enumerated in the [Note, Loan Agreement and Security Agreements], and/or such other remedies or actions as the [plaintiff] is allowed by law." *See id.* ¶ 6. The defendants further agreed that in the event of a default, they would "be responsible for all additional reasonable costs and expenses of [plaintiff] . . . including attorneys' fees and costs incurred and related to the collection of the amounts due under the [Note, Loan Agreement and Security Agreement]." *Id.* ¶ 9.

Defendants failed to make the monthly payments due under the Forbearance Agreement. *See* Compl. ¶ 28; Updated Payment History, Dkt. 44-1. By correspondence dated March 31, 2023, plaintiff found defendants in default and demanded payment of all amounts due. *See* Demand, Dkt. 37-10; *see also* Compl. ¶ 29. Defendants failed to make these payments upon demand. *See* Compl. ¶ 30.

**Procedural Background**

On August 21, 2023, plaintiff commenced this action. *See* Dkt. 1. On December 8, 2023, defendants, then-represented by counsel, filed an Answer. Dkt. 10.

On December 21, 2023, the parties appeared for an initial conference, at which the Court entered a pretrial schedule and encouraged the parties to explore settlement. *See* Min. Entry dated December 21, 2023. Discovery thereafter proceeded and was completed by May 7, 2024, at which time plaintiff indicated its intention to move for summary judgment. *See* Min. Entry dated May 7, 2024.

On July 1, 2024, plaintiff submitted a request for a pre-motion conference in anticipation of moving for summary judgment. *See* Mot. for Pre-Motion Conference, Dkt. 17. Defendants opposed plaintiff's pre-motion conference request, arguing that summary judgment should be denied. *See* Letter Resp. to Pl.'s Pre-Motion Letter dated July 14, 2024, Dkt. 19. Pursuant to the briefing schedule set by the Court, plaintiff served its motion for summary judgment on November 19, 2024. *See* Dkt. 23. However, defendants never served or filed an opposition to the motion.

On January 15, 2025, defendants' counsel moved to withdraw. *See* First Mot. to Withdraw as Att'y dated Jan. 15, 2025, Dkt. 26. On January 30, 2025, the Court granted the motion after defendants failed to appear despite receiving prior notice. *See* Min. Entry dated January 30, 2025. The Court directed defendant Gross to obtain substitute counsel or proceed *pro se* and advised that, the corporate defendant, Raizy's Wig Salon, must appear through counsel. *Id.* The Court further warned that failure to comply or appear could result in entry of default. *Id.*

Thereafter, at conferences held on March 4 and 17, 2025, defendants failed to appear despite receiving notice of the proceedings. *See* Min. Entry dated Mar. 4, 2025; Min. Entry dated Mar. 17, 2025. At the March 17, 2025 conference, the Court ordered Gross to show cause in writing why her Answer should not be stricken and default entered for failure to appear and comply with Court orders, and why she had failed to retain counsel for Raizy's Wig Salon. *See* Min. Entry dated Mar. 17, 2025.

At the April 10, 2025 show cause hearing, defendants again failed to appear and did not respond to the Court's order to show cause. *See* Min. Entry dated Apr. 10, 2025. Accordingly, this Court *sua sponte* recommended to the District Court that defendants' Answer be stricken and

that the Clerk of Court enter default against them. *See id.* On May 15, 2025, the District Court adopted this Court's recommendation, struck defendants' Answer and directed the Clerk of Court to enter default against them. *See* Order dated May 15, 2025. On May 19, 2025, the Clerk of Court entered defendants' default. Dkt. 33.

On June 19, 2025, plaintiff filed a motion for default judgment against defendants. *See* Mot. for Default J., Dkt. 35. However, this Court denied without prejudice plaintiff's initial motion for failure to comply with Local Civil Rule 55.2. *See* Order Denying Without Prejudice dated July 31, 2025. On November 7, 2025, plaintiff refiled its motion for default judgment, curing the earlier deficiencies. *See* Second Mot. for Default J., Dkt. 37.

On April 16, 2026, the Court held a hearing on plaintiff's motion for default judgment. *See* Min. Entry dated April 16, 2026. The Court directed plaintiff to supplement its motion with additional information. *Id.* Defendants failed to appear for the hearing, despite having been properly served with notice. *See id.*; Certificate of Service, Dkt. 40. On July 23, 2026, plaintiff supplemented its motion with defendants' payment history and updated interest calculations. Dkt. 44.

## Discussion

### I. Liability

#### A. Default Judgment Standard

Rule 55 of the Federal Rules of Civil Procedure governs motions for default judgment. Rule 55 sets forth a two-step process for entry of a default judgment. *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95-96 (2d Cir. 1993). First, the Clerk of Court enters the default pursuant to Rule 55(a) by notation of the party's default on the Clerk's record of the case when a

party fails to plead or otherwise defend the action.[3] *See id.; see also* Fed R. Civ. P. 55(a) ("When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."). Second, after the Clerk of Court enters a default against a party, if that party fails to appear or otherwise move to set aside the default pursuant to Rule 55(c), the plaintiff may apply to the court for a default judgment. *See* Fed. R. Civ. P. 55(a), (b)(2).

Here, after the defendants failed to appear at multiple conferences and hearings despite receiving notice and did not respond to the Court's order to show cause, the District Court directed the Clerk of the Court to enter default against them. To date, defendants have not appeared or moved to vacate the entries of default.

When evaluating a plaintiff's application for a default judgment, "a court is required to accept all [] factual allegations as true and draw all reasonable inferences in [plaintiff's] favor." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). "Nevertheless, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *Labarbera v. ASTC Lab'ys., Inc.*, 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (internal quotations and citations omitted); *see also TAGC Mgmt., LLC v. Lehman, Lee & Xu Ltd.*, 536 F. App'x 45, 46 (2d Cir. 2013) ("[P]rior to entering default judgment, a district court is required to determine whether the plaintiff's allegations establish the defendant's liability as a matter of law.") (internal quotations and citations omitted).

"Default judgments are 'generally disfavored and are reserved for rare occasions.'" *City*

[3] "A defendant may fail to defend by failing to appear for a deposition, dismissing counsel, giving vague and unresponsive answers to interrogatories, and failing to appear for trial, or by failing to comply with discovery orders." *Weber Cap. LLC v. Racaniello*, 821 F. Supp. 3d 361, 367 (E.D.N.Y. 2026) (internal quotation marks and citation omitted).

*of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 129 (2d Cir. 2011) (quoting *Enron Oil*, 10 F.3d at 96). Providing guidance as to when a default judgment is appropriate, the Second Circuit has cautioned that since a default judgment is an extreme remedy, it should only be entered as a last resort. *See Meehan v. Snow*, 652 F.2d 274, 277 (2d Cir. 1981). While the Second Circuit has recognized the "push on a trial court to dispose of cases that, in disregard of the rules, are not processed expeditiously [and] . . . delay and clog its calendar," it has held that the district court must balance that interest with its responsibility to "afford[] litigants a reasonable chance to be heard." *Enron Oil*, 10 F.3d at 95-96. Thus, in light of the "oft-stated preference for resolving disputes on merits," doubts should be resolved in favor of the defaulting party. *See id*. at 95. Accordingly, a plaintiff is not entitled to a default judgment as a matter of right simply because a defendant is in default. *See Erwin DeMarino Trucking Co. v. Jackson*, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (noting that courts must "supervise default judgments with extreme care to avoid miscarriages of justice").

A default serves as the defendant's admission that the complaint's well-pleaded factual allegations are true. *See Mickalis Pawn Shop*, 645 F.3d at 137; *Finkel*, 577 F.3d at 84 (after default the "court is required to accept all of the [plaintiff's] [well-pleaded] allegations as true and draw all reasonable inferences in its favor."). A fact is not considered "well-pleaded," however, "if it is inconsistent with [the] other allegations of the complaint or with facts of which the court can take judicial notice, or is contrary to uncontroverted material in the file of the case." *Hop Hing Produces Inc. v. Lin Zhang Trading Co., Inc.,* No. 11-CV-03259, 2013 WL 3990761, at *3 (E.D.N.Y. Aug. 5, 2013) (internal quotations and citations omitted). Ultimately, whether to grant a motion for default judgment is "left to the [court's] sound discretion." *Shah v. New York State Dep't of Civ. Serv.*, 168 F.3d 610, 615 (2d Cir. 1999); *Div. 1181 Amalgamated*

*Transit Union-New York Emps. Pension Fund v. D & A Bus Co.*, 270 F. Supp. 3d 593, 606 (E.D.N.Y. 2017).

Here, defendants' failure to respond to the Court's orders was willful. Defendants were properly served and initially appeared in this action and filed an Answer. However, defendants stopped participating after their counsel withdrew. Defendants have also failed to respond to plaintiff's motion for default judgment. Accordingly, this Court recommends finding that defendants' failure to defend constitutes an admission of the factual allegations contained in the Complaint and now proceeds to consider whether those facts establish defendants' liability.

### B. Breach of Contract and Breach of Guaranty

#### 1. Choice of Law

This Court must first determine what law to apply to plaintiff's claims. *See, e.g., D'Amato v. Five Star Reporting, Inc.*, 80 F. Supp. 3d 395, 407 (E.D.N.Y. 2015). As discussed, plaintiff brought this case pursuant to the Court's diversity jurisdiction, under 28 U.S.C. § 1332(a)(1). *See* Compl. ¶ 5. "A federal court sitting in diversity applies the choice-of-law rules of the forum state." *Maryland Cas. Co. v. Cont'l Cas. Co.*, 332 F.3d 145, 151 (2d Cir. 2003). "In a contract dispute, New York courts will generally honor a choice-of-law provision in an agreement." *Scharnikow v. Siracuse*, No. 15-CV-6991, 2016 WL 7480360, at *3 (E.D.N.Y. Dec. 6, 2016) (citation omitted), *report and recommendation adopted*, 2016 WL 7480364 (E.D.N.Y. Dec. 29, 2016).

Here, the Note, Loan, Security, Guaranty and Forbearance Agreements each contain a New York choice of law provision. *See, e.g.*, Note at 2, Dkt. 37-2; Loan Agreement at 5, Dkt. 37-3; Security Agreement at 5, Dkt. 37-5; Guaranty at 3, Dkt. 37-4; Forbearance Agreement ¶ 15, Dkt. 37-9. In addition, where, as here, defendants have defaulted, "it can be said that they

have consented to the application of the forum state's law." *NextGear Cap., Inc. v. Tristate Auto Serv. Ctr., Inc.*, No. 23-CV-9458, 2025 WL 897565, at *7 (E.D.N.Y. Feb. 27, 2025) (citation omitted), *report and recommendation adopted*, 2025 WL 895849 (E.D.N.Y. Mar. 24, 2025); *see Leser v. U.S. Bank Nat'l Ass'n*, No. 09-CV-2362, 2012 WL 4472025, at *5 (E.D.N.Y. Sept. 25, 2012); *Chung v. Sano*, No. 10-CV-2301, 2011 WL 1303292, at *7 (E.D.N.Y. Feb. 25, 2011) (applying New York law where defendants defaulted), *report and recommendation adopted*, 2011 WL 1298891 (E.D.N.Y. Mar. 31, 2011). As plaintiff exclusively applies New York law, and as defendants have proffered no argument to the contrary by virtue of their default, the Court applies New York law to the claims and issues in this action. *See Pogodin v. Cryptorion Inc.*, No. 18-CV-791, 2020 WL 13581660, at *5 n.4 (E.D.N.Y. Sept. 17, 2020), *adopted*, Order (E.D.N.Y. Oct. 13, 2020).

**2. Substantive Law**

"To state a claim for breach of contract under New York law, 'the complaint must allege: [1] the formation of a contract between the parties; [2] performance by the plaintiff; [3] failure of defendant to perform; and [4] damages.'" *Orlander v. Staples, Inc.*, 802 F.3d 289, 294 (2d Cir. 2015) (quoting *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 142 (2d Cir. 2011)). "To establish a prima facie case for the recovery of a breach of contract to pay a promissory note, the plaintiff simply must show proof of the note and the defendant's failure to pay by its maturity date." *Khotovitskaya v. Shimunov*, 723 F. Supp. 3d 235, 242 (E.D.N.Y. 2024) (citation omitted); *see Export-Import Bank of the United States v. Agricola Del Mar BCS*, 536 F. Supp. 2d 345, 349 (S.D.N.Y. 2008) (citation omitted), *aff'd*, 334 F. App'x 353 (2d Cir. 2009).

Here, the well-pleaded allegations in the Complaint, accepted as true, establish defendants' liability for breach of contract. As to the first element – the existence of a contract –

the Complaint alleges, and the exhibits proffered by plaintiff establish, that the parties entered into the Note, Loan and Security Agreements, pursuant to which plaintiff made a loan to defendants. The parties subsequently entered into a Forbearance Agreement, under which plaintiff agreed to forbear from exercising its remedies following defendants' default on the Note, Loan Agreement and Security Agreements.

Second, plaintiff performed its obligations by lending defendants money. Defendants, however, breached the Note, Loan Agreement and Forbearance Agreement by failing to make timely monthly payments on the outstanding balance and breached the Security Agreement by failing to provide the required collateral upon demand. The Court, therefore, concludes that plaintiff has properly alleged a breach of contract claim based on defendants' failure to pay plaintiff the amounts due under the loan documents.

The elements of a *prima facie* case for breach of guaranty are similar. "[I]n an action against a guarantor, a plaintiff must show: (1) the existence of the guaranty; (2) the underlying debt; and (3) the guarantor's failure to perform under the guaranty." *Khotovitskaya,* 2024 WL 1159557, at *4 (quoting *UMB Bank, N.A. v. Bluestone Coke, LLC*, No. 20-CV-2043, 2020 WL 6712307, at *4 (S.D.N.Y. Nov. 16, 2020)); *see Bank of Am., N.A. v. Vanderbilt Trading USA LLC*, No. 17-CV-7167, 2019 WL 8807747, at *8 (E.D.N.Y. Sept. 9, 2019). "A guaranty is a collateral promise to answer for the payment of a debt or obligation of another, in the event the first person [or entity] liable to pay or perform the obligation fails." *Vanderbilt Trading*, 2019 WL 8807747, at *8 (citation omitted). To establish a guarantor's liability, plaintiff must show "an absolute and unconditional guaranty, the underlying debt, and the guarantor's failure to perform under the guarantee." *HSH Nordbank AG N.Y. Branch v. Swerdlow*, 672 F. Supp. 2d 409, 417 (S.D.N.Y. 2009) (internal quotation marks and citation omitted), *aff'd sub nom. HSH*

*Nordbank AG New York Branch v. Street*, 421 F. App'x 70 (2d Cir. 2011).

Here, plaintiff has established that the guarantor – defendant Gross – signed a written guaranty of the Note and Loan, Security, and Forbearance Agreements, under which she unconditionally agreed to guarantee payment of all amounts owed to plaintiff in the event of a default. Plaintiff has adequately alleged breach of contract against Gross based on Gross' failure to pay the amounts due.

**II. Damages**

Although the allegations of a complaint pertaining to liability are deemed admitted upon entry of a default judgment, allegations relating to damages are not. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992) (citing *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974)). "Because the extent of the damages pleaded by a plaintiff is not deemed to be established by the default, the Court must conduct 'an inquiry in order to ascertain the amount of damages with reasonable certainty.'" *Trs. of Loc. 7 Tile Indus. Welfare Fund v. All Flooring Sols., LLC*, No. 19-CV-126, 2020 WL 9814088, at *3 (E.D.N.Y. Feb. 12, 2020) (quoting *Credit Lyonnais Secs. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)). A court may make this determination based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence. *See* Fed. R. Civ. P. 55(b)(2); *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508 (2d Cir. 1991).

Having found that the Complaint establishes defendants' liability for breach of contract, the Court now addresses the damages plaintiff is entitled to recover. Under New York law, it is well settled that "[a] party injured by breach of contract is entitled to be placed in the position it would have occupied had the contract been fulfilled according to its terms." *Merrill Lynch & Co., Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 185 (2d Cir. 2007) (citation omitted); *see LG*

*Cap. Funding, LLC v. Wowio, Inc.*, No. 16-CV-6632, 2018 WL 3202077, at *10 (E.D.N.Y. Apr. 24, 2018), *report and recommendation adopted*, 2018 WL 2224991 (E.D.N.Y. May 15, 2018). In an action for breach of contract for failure to pay, "the plaintiff is entitled to recover the unpaid amount due under the contract plus interest." *GATX Corp. v. Aero Jet Corporate*, No. 13-CV-4400, 2014 WL 3585887, at *4 (S.D.N.Y. July 22, 2014), *report and recommendation adopted*, 2014 WL 3925233 (S.D.N.Y. Aug. 11, 2014); *see Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*, 487 F.3d 89, 109 (2d Cir. 2007) (damages include "money that the breaching party agreed to pay under the contract.").

Plaintiff seeks a principal damage award in the amount of $81,383.77 based on the outstanding principal loan balance owed by the defendants. *See* Anderson Decl. ¶ 43, Dkt. 37-1; Proposed J., Dkt. 37-23. Plaintiff has provided accounting records documenting the payment history of the loan. *See* Updated Payment History, Dkt. 44-1. In addition, plaintiff has submitted the sworn declaration of plaintiff's Vice President of SBA Workout Group, Glenn Anderson, who is familiar with the relevant facts and documents based on his review of plaintiff's records. *See* Anderson Decl. Based on this Court's review of the documents submitted, the Court has verified that plaintiff's calculations appear correct. *See* Updated Payment History, Dkt. 44-1. Defendants have not opposed plaintiff's motion or otherwise presented any evidence disputing the amount of damages sought by plaintiff. The detailed accounting of the amounts owed to plaintiff, in light of defendants' failure to oppose the motion, provides a sufficient basis for the Court to determine damages. *See Berkshire Bank v. Warrior Poet Appraisals, Inc.*, No. 24-CV-03215, 2025 WL 3451995, at *9 (E.D.N.Y. Apr. 16, 2025); *Lagemann v. Spence*, No. 18-CV-12218, 2020 WL 5754800, at *13 (S.D.N.Y. May 18, 2020) ("These detailed accountings, in conjunction with [defendant's] refusal to oppose this motion, or

answer questions at his deposition concerning damages, or otherwise answer the claims of this lawsuit, demonstrate that there is no genuine issue of material fact as to Plaintiffs' calculations."), *report and recommendation adopted*, 2020 WL 7384009 (S.D.N.Y. Dec. 16, 2020); *De Lage Landen Fin. Servs., Inc., v. Univ. Wilde, Inc.*, No. 19-CV-1371, 2019 WL 4195441, at *4 (S.D.N.Y. Aug. 15, 2019) (on default judgment, relying on affidavit in lieu of hearing to award damages for breach of equipment lease agreements), *report and recommendation adopted*, 2019 WL 4194574 (S.D.N.Y. Sept. 3, 2019).

Thus, plaintiff has demonstrated to a reasonable certainty that the outstanding principal balance due totals **$81,383.77**.[4]

## III. Pre-Judgment Interest

Plaintiff seeks pre-judgment interest on the unpaid principal balance at the rate provided in the applicable agreements -- 3.490 percentage points above the Wall Street Journal Prime rate.[5] *See* Note at 1, Dkt. 37-2; Demand, Dkt. 37-10.

In diversity cases, New York law governs the award of pre-judgment interest. *See Terwilliger v. Terwilliger*, 206 F.3d 240, 249 (2d Cir. 2000). New York law entitles prevailing plaintiffs to pre-judgment interest on any sum awarded for breach of contract, "computed from the earliest ascertainable date the cause of action existed." *Marfia v. T.C. Ziraat Bankasi*, 147

[4] Originally, plaintiff sought recovery of insurance and appraisal costs. *See* Anderson Decl. ¶ 43. However, plaintiff now waives recovery of those fees. *See* Suppl. Decl. of Matthew P. Dolan ("Dolan Suppl. Decl.") ¶¶ 4-5, Dkt. 42.

[5] "The prime rate is the rate at which banks lend money to their most favored clients and is periodically ascertained by surveying banks to determine their lending rates." *Trs. of Loc. 138, 138a & 138b Int'l Union of Operating Eng'rs Welfare Fund, Annuity Fund, Legal Fund, Vacation Fund, Apprenticeship Training Fund v. Intercounty Paving Assocs. LLC*, No. 19-CV-3106, 2022 WL 20612859, at *2 (E.D.N.Y. June 2, 2022). "The prime rate changes infrequently and only incrementally." *Id.*

F.3d 83, 90 (2d Cir. 1998) (quoting N.Y. C.P.L.R. 5001(b)). Where the parties stipulate to an interest rate, "prejudgment interest is calculated at the contract rate, until the amount owed under the contract merges into a judgment." *Bank of Am., N.A. v. Brooklyn Carpet Exch., Inc.*, No. 15-CV-5981, 2016 WL 8674686, at *5 (S.D.N.Y. May 13, 2016), *report and recommendation adopted*, 2016 WL 2566237 (S.D.N.Y. June 27, 2016).

Here, the loan at issue was subject to a variable interest rate equal to the Wall Street Journal Prime Rate, plus 3.49 percentage points. *See* Note at 1, Dkt. 37-2. The Note provides that the initial interest rate was set to an annual percentage rate of 8.99, based on the Wall Street Journal Prime Rate of 5.5 percent at that time, plus 3.49 percentage points. *Id.* The Court has reviewed the Wall Street Journal Prime Rate in effect from May 7, 2019 through the present, which fluctuated between 3.25 to 8.5 percent during the relevant period. *See* History of the U.S. (Fed) Prime Rate, https://www.fedprimerate.com/wall_street_journal_prime_rate_history.htm. Plaintiff has applied the correct interest rate in its calculations. In addition, plaintiff has correctly calculated interest based on a 360-day year as provided in the Note. *See* Note at 1, Dkt. 37-2.

Here, plaintiff seeks pre-judgment interest on the unpaid principal owed in the amount of $42,798.81, calculated through July 13, 2026, and at a daily rate of $23.15 thereafter until the entry of judgment. *See* Updated Payment History, Dkt. 44-1; Proposed J., Dkt. 37-23. Plaintiff correctly calculated interest owed by multiplying the outstanding principal by the applicable interest rate, dividing the product by 360 days, and multiplying that daily interest figure by the number of actual days outstanding. Based on a review of plaintiff's detailed calculations of the interest owed (*see* Updated Payment History, Dkt. 44-1), the Court respectfully recommends awarding the amount sought of **$42,798.81** through July 13, 2026, and at a daily rate of **$23.15**

until the entry of judgment ($81,383.77 x 10.24 percent / 360 days).[6] *See CIT Bank, N.A. v. Seeram*, No. 16-CV-2608, 2017 WL 8220204, at *5 (E.D.N.Y. Feb. 15, 2017) (finding sufficient affidavit supported by payment log and accrued interest schedule), *report and recommendation adopted*, 2018 WL 1308003 (E.D.N.Y. Mar. 13, 2018); *Eastern Sav. Bank, FSB v. Whyte*, No. 13-CV-6111, 2015 WL 790036, at *6-7 (E.D.N.Y. Feb. 24, 2015) (adopting report and recommendation relying on supporting documentation and plaintiff's interest calculations).

## IV. Post-Judgment Interest

Plaintiff is entitled to post-judgment interest under 28 U.S.C. § 1961(a). Post-judgment interest is calculated "from the date of the entry of the judgment at [the federal] rate equal to the weekly average 1-year constant maturity Treasury yield . . . for the calendar week preceding the date of judgment." *Id*. (typographical error and explanatory footnote omitted). Such awards are "mandatory" under section 1961. *See Westinghouse Credit Corp. v. D'Urso*, 371 F.3d 96, 100 (2d Cir. 2004). Accordingly, the Court recommends that plaintiff be awarded post-judgment interest on all sums awarded, to accrue from the entry of judgment until the date of payment.

## V. Plaintiff's Security Interest

Plaintiff also seeks to "take possession and control of the Collateral and to liquidate same in a commercially reasonable manner pursuant to the New York Uniform Commercial Code." Mem. of Law in Support of Pl. TD Bank's Mot. for Default J. at 10, Dkt. 37-24; *see* Proposed J., Dkt. 37-23.

Under Article Nine of the UCC, after a borrower defaults, "a secured party may reduce a claim to judgment, foreclose, or otherwise enforce the claim, security interest, or agricultural lien

[6] The interest rate of 10.24 percent is calculated by adding 3.49 percentage points to the prime rate of 6.75 percent, which rate change went into effect on December 11, 2025.

by any available judicial procedure." N.Y. U.C.C. § 9-601(a)(1); *see Bank of Am., N.A. v. City View Blinds of N.Y., Inc.,* No. 20-CV-9911, 2022 WL 580764, at *5 (S.D.N.Y. Feb. 25, 2022); *Rapillo v. CitiMortgage, Inc.*, No. 15-CV-5976, 2018 WL 1175127, at *7 (E.D.N.Y. Mar. 5, 2018). After a default, "a secured party may take possession of the collateral" either "pursuant to judicial process[ ] or without judicial process, if it proceeds without breach of the peace." N.Y. U.C.C. § 9-609(a)(1), (b)(1)-(2). Additionally, "New York U.C.C. § 9-610 authorizes a secured party to dispose of its collateral, including by selling it, upon a default by the debtor." *Rapillo*, 2018 WL 1175127, at *7; N.Y. U.C.C. § 9-610(a).

It is well established under New York law that "[t]here is no inconsistency between an action for specific performance and an action for breach of contract." *Berkshire Bank*, 2025 WL 3451995, at *10 (quoting *Versatile Housewares & Gardening Sys., Inc. v. Thrill Logistics, Inc.*, 819 F. Supp. 2d 230, 239 (S.D.N.Y. 2011)). A secured creditor's rights "are cumulative and may be exercised simultaneously." N.Y. U.C.C. § 9-601(c). Accordingly, in a similar context, courts routinely have awarded "immediate possession of . . . Collateral," pursuant to a security interest. *See Berkshire Bank*, 2025 WL 3451995, at *10; *City View Blinds of N.Y., Inc.*, 2022 WL 580764, at *5 (granting summary judgment); *Bank of Am., N.A. v. Jacobi Tool & Die M.F.G., Inc.*, No. 17-CV-6828, 2019 WL 3553796, at *5-6 (E.D.N.Y. Aug. 5, 2019) (same).

Plaintiff has established that it has a valid and perfected security interest in the Collateral. Plaintiff has submitted the signed Security Agreement and the UCC Financing Statement filed with the Secretary of State. Defendants' default is undisputed, and, therefore, "the UCC permits [plaintiff] to take possession of the Collateral and dispose of it pursuant to Article Nine." *City View Blinds of N.Y., Inc.*, 2022 WL 580764, at *5; *Vanderbilt Trading*, 2019 WL 8807747, at *7; *Jacobi Tool*, 2019 WL 3553796, at *6. Accordingly, the undersigned respectfully recommends

that the District Court issue an Order directing foreclosure of the security interest.

**VI. Attorneys' Fees and Costs**

Plaintiff requests $17,431.00 in attorneys' fees and $1,012.00 in costs, for a total of $18,443.00,[7] pursuant to the terms of the Note and Loan, Security, and Forbearance Agreements. *See* Decl. of Legal Fees and Costs ¶¶ 3, 13, Dkt. 37-21.

"In a diversity case, the question of whether to award attorneys' fees is governed by state law." *Precise Leads, Inc. v. Nat'l Brokers of Am., Inc.*, No. 18-CV-8661, 2020 WL 736918, at *6 (S.D.N.Y. Jan. 21, 2020), *report and recommendation adopted as modified*, 2020 WL 729764 (S.D.N.Y. Feb. 13, 2020). "Under New York law, a contract that provides for an award of reasonable attorneys' fees to the prevailing party in an action to enforce the contract is enforceable if the contractual language is sufficiently clear." *NetsJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 175 (2d Cir. 2008). If the contract so provides, the "court will order the losing party to pay whatever amounts have been expended by the prevailing party, so long as those amounts are not unreasonable." *F.H. Krear & Co. v. Nineteen Named Trs.*, 810 F.2d 1250, 1263 (2d Cir. 1987); *see Carco Grp., Inc. v. Maconachy*, 718 F.3d 72, 86 (2d Cir. 2013) ("the touchstone for an award of attorneys' fees pursuant to a contract is reasonableness"). "[A]ttorneys' fees must be documented by contemporaneously created time records that specify, for each [timekeeper], the date, the hours expended, and the nature of the work done." *NextGear*, 2025 WL 897565, at *10 (internal quotation marks and citation omitted).

Here, the Note, Loan Agreement, Security Agreement, Guaranty and Forbearance Agreements contain specific provisions that permit plaintiff to recover attorneys' fees and other

---

[7] Plaintiff incorrectly calculated the total as $18,041.00. *See* Decl. of Legal Fees and Costs ¶ 14, Dkt. 37-21. Plaintiff's calculation omitted the $402.00 filing fee.

legal expenses from defendants. *See, e.g.*, Note at 1, Dkt. 37-2; Loan Agreement at 4, Dkt. 37-3; Security Agreement at 4-5, Dkt. 37-5; Guaranty at 3, Dkt. 37-4; Forbearance Agreement ¶ 9, Dkt. 37-9.

"[T]he Court must [nevertheless] assess whether the fees claimed are reasonable." *56 Willoughby A LLC v. Zhang*, No. 20-CV-3973, 2021 WL 3622084, at *9 (E.D.N.Y. July 27, 2021) (citation omitted), *report and recommendation adopted*, 2021 WL 3617671 (E.D.N.Y. Aug. 16, 2021); *see Carco*, 718 F.3d at 86. "[T]he Supreme Court and Second Circuit have held that 'the lodestar – the product of a reasonable hourly rate and the reasonable number of hours required by the case – creates a presumptively reasonable fee.'" *Garcia-Severino v. TDL Restoration, Inc.*, No. 18-CV-11401, 2020 WL 7239678, at *1 (S.D.N.Y. Dec. 9, 2020) (quoting *Millea v. Metro-North R.R.*, 658 F.3d 154, 166 (2d Cir. 2011)). This presumptively reasonable fee or lodestar is essentially "'what a reasonable, paying client would be willing to pay,' given that such party wishes 'to spend the minimum necessary to litigate the case effectively.'" *Simmons v. NYC Transit Auth.*, 575 F.3d 170, 174-75 (2d Cir. 2009) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008)). In particular, when assessing an attorney's requested hourly rate, courts typically consider other rates awarded in the district where the reviewing court sits. *See Simmons*, 575 F.3d at 174-75; *Arbor Hill*, 522 F.3d at 191. Other factors include the labor and skill required, the difficulty of the issues, the attorney's customary rate, the experience, reputation and ability of the attorney, and awards in similar cases. *See Arbor Hill*, 522 F.3d at 191.

District courts have broad discretion in determining the reasonableness of an attorney's requested fees. *See Chocolatl v. Rendezvous Cafe, Inc.*, No. 18-CV-3372, 2019 WL 5694104, at *14 (E.D.N.Y. Aug. 16, 2019), *report and recommendation adopted*, 2020 WL 1270891

(E.D.N.Y. Mar. 17, 2020). This standard applies not only to cases involving statutory fee-shifting, but also to those in which fees are authorized by contract. *See, e.g., 56 Willoughby A LLC*, 2021 WL 3622084, at *9 (employing *Arbor Hill* analysis); *RJ Kitchen Assocs. Inc. v. Skalski*, No. 16-CV-1436, 2019 WL 2436092, at *7 (E.D.N.Y. Feb. 25, 2019) (same).

Plaintiff has submitted time records on behalf of its counsel, Matthew P. Dolan, a partner, at reduced hourly rates of $240.00 through December 2022, $275.00 through December 2023, $285.00 beginning in January 2024, and $300.00 beginning in January 2025. *See* Transaction File List, Dkt. 37-22. Mr. Dolan has been licensed to practice law since 2014 and has extensive experience litigating commercial collection matters on behalf of businesses and financial institutions. *See* Dolan Suppl. Decl. ¶¶ 13-19, Dkt. 42. Plaintiff seeks fees for the work of associate Peter Y. Roh at a reduced hourly rate of $240.00, and paralegals at reduced hourly rates ranging from $125.00 through December 2022 to $150.00 beginning in January 2025. *See* Decl. of Legal Fees and Costs ¶ 3, Dkt. 37-21.

The requested hourly rates for Mr. Dolan and Mr. Roh are well within the typical range for attorneys with similar credentials and experience. "In this district, hourly rates generally range from $300 to $450 for partner-level attorneys, and $200 to $325 for those with less experience." *Cidoni v. Woodhaven Ctr. of Care*, No. 21-CV-03654, 2023 WL 2465167, at *4 (E.D.N.Y. Mar. 10, 2023); *Williamsburg Climbing Gym Co. LLC v. Ronit Realty LLC*, No. 20-CV-2073, 2023 WL 1072952, at *4 (E.D.N.Y. Jan. 9, 2023), *report and recommendation adopted*, 2023 WL 1070615 (E.D.N.Y. Jan. 27, 2023)) (awarding $325.00 per hour for associates with over five years of experience); *Cap. One, N.A. v. Auto Gallery Motors, LLC*, No. 16-CV-6534, 2020 WL 423422, at *4 (E.D.N.Y. Jan. 27, 2020) (awarding $300 per hour for associates with more than eight years' experience and $250 per hour for those with fewer than five years'

experience for a non-complex case).

However, plaintiff's request of up to $150 per hour for the work of paralegals is slightly outside the reasonable range. *See* Decl. of Legal Fees and Costs ¶ 3, Dkt. 37-21. Plaintiff's counsel does not provide any information about the paralegals' experience or credentials that would support these hourly rates. "Within this district, the requested rate of $125 per hour is at the higher end of what courts in this district award for the work done by paralegals." *See Thompson v. Hyun Suk Park*, No. 18-CV-0006, 2020 WL 5822455, at *12 (E.D.N.Y. Sept. 1, 2020), *report and recommendation adopted*, 2020 WL 5820547 (E.D.N.Y. Sept. 30, 2020) (collecting cases awarding paralegals an hourly rate of $75 per hour); *see also De la Cruz Casarrubias v. Surf Ave Wine & Liquor Inc.*, No. 20-CV-3003, 2021 WL 2227977, at *12 (E.D.N.Y. May 11, 2021), *report and recommendation adopted*, 2021 WL 2223275 (E.D.N.Y. June 2, 2021) (reducing paralegal fees from $150 to $75). Thus, based on what courts in this District have awarded for paralegals previously, this Court recommends reducing the paralegal rate from $150 to $125 per hour. *See Wells Fargo Bank Nat'l Ass'n as Trustee for the Holders of Comm 2014-Ubs6 Mortgage Tr. Comm. Mortgage Pass-Through Certificates v. 366 Realty LLC*, No. 17-CV-3570, 2026 WL 1740295, at *10-11 (E.D.N.Y. June 17, 2026) (reducing paralegal rate to $100 per hour in absence of background information); *Choi v. AHC Med. Servs., PLLC*, No. 22-CV-1450, 2023 WL 5612394, at *12 (E.D.N.Y. Aug. 1, 2023), *report and recommendation adopted*, 2023 WL 5613718 (E.D.N.Y. Aug. 30, 2023).

Next, this Court must determine whether the hours billed were also reasonable. Courts award fees only for hours that are "reasonably expended." *Hensley v. Eckerhart*, 461 U.S. 424, 430, 433 (1983). "When considering an application for attorneys' fees, the Court should exclude 'excessive, redundant, or otherwise unnecessary' hours." *Dominic Schindler Holding, AG v.*

*Moore*, No. 20-CV-4407, 2022 WL 987428, at *9 (E.D.N.Y. Jan. 12, 2022) (quoting *Hensley*, 461 U.S. at 434).

Here, plaintiff seeks attorneys' fees for 75.9 hours of work performed. Decl. of Legal Fees and Costs ¶ 3, Dkt. 37-21. Plaintiff's counsel has submitted time records setting forth each timekeeper's name, as well as the dates, descriptions, and number of hours of work performed. The hours documented in these contemporaneous time records are largely reasonable.

Accordingly, based on the hourly rates recommended above and the hours billed in this matter, the Court respectfully recommends awarding plaintiff **$17,119.50** in attorneys' fees.

| **Name** | **Hours** | **Hourly rate** | **Total** |
|---|---|---|---|
| Matthew Dolan | 47.4 | $240.00-300.00 | $13,373.50[8] |
| Peter Roh | 1.6 | $240.00 | $384.00 |
| Jalyssa Alarcon | 15.8 | $125.00 | $1,975.00 |
| Kristen Gugliuzza | 11.1[9] | $125.00 | $1,387.50 |
| **Total** | | | **$17,119.50** |

In addition to attorneys' fees, plaintiff seeks to recover $1,012.00 in costs. *See* Decl. of Legal Fees and Costs ¶ 13, Dkt. 37-21. As the Court noted above, the Note, Loan, Security, and Forbearance Agreements permit plaintiff to recover costs incurred in connection with this matter. In addition, as a prevailing party, plaintiff is also entitled to recovery of costs approved by the Clerk of the Court. *See* Fed. R. Civ. P. 54(d)(1) ("Unless a federal statute, these rules, or a court order provides otherwise, costs – other than attorney's fees – should be allowed to the prevailing party.").

The costs requested, including the court's filing fee and service of process fees, are

[8] Mr. Dolan's total reflects the product of his hours worked multiplied by his billing rate in effect at that time.

[9] Plaintiff excluded 1.6 hours of Kristen Gugliuzza's time as "Non-billable."

properly recoverable. *See Freedom Mortg. Corp. v. Trejo*, No. 22-CV-7116, 2024 WL 3465241, at *16 (E.D.N.Y. July 19, 2024) (awarding filing fees, service of process fees, and skip traces); *Freedom Mortgage Corp. v. McLain*, No. 23-CV-1309, 2023 WL 8473948, *8 (E.D.N.Y. Oct. 12, 2023) (same), *report and recommendation adopted*, 2023 WL 7320257 (E.D.N.Y. Nov. 7, 2023). This Court, therefore, recommends awarding plaintiff **$1,012.00** in costs.

**Conclusion**

For the foregoing reasons, the Court respectfully recommends granting plaintiff's motion for default judgment against defendants Raizy's Wig Salon, Inc. and Raizel Gross and awarding plaintiff **$81,383.77** on its breach of contract claim and granting foreclosure on its security interest. The Court further recommends awarding pre-judgment interest in the amount of **$42,798.81** calculated through July 13, 2026, and at a daily rate of **$23.15** thereafter, through the date of entry of judgment. Finally, the Court recommends awarding plaintiff **$17,119.50** in attorneys' fees and **$1,012.00** in costs.

Any objections to the recommendations made in this Report must be filed with the Honorable Diane Gujarati within 14 days after filing of this Report and Recommendation and, in any event, on or before August 18, 2026. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). Failure to file timely objections may waive the right to appeal the District Court's order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (per curiam) (discussing waiver under the former ten-day limit).

A copy of this Report and Recommendation is being electronically served on counsel. Further, the Court directs plaintiff's counsel to serve a copy of this Report and Recommendation

by overnight mail and first-class mail on defendants and to file proof of service on ECF by August 7, 2026.

**SO ORDERED**

Dated: Brooklyn, New York
August 4, 2026

s/ James R. Cho
James R. Cho
United States Magistrate Judge